IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANA ASSOCIATION OF COUNTIES PROPERTY AND CASUALTY TRUST,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CERTAIN UNDERWRITERS AT LLOYDS,<br><br>　　　　　　Defendants. | CV 19-196-M-DLC<br><br>ORDER |

Plaintiff Montana Association of Counties Property and Casualty Trust ("MACo") sued Defendants Certain Underwriters at Lloyds ("Underwriters") for damages resulting from breach of contract and violations of the Montana Unfair Trade Practices Act. (Docs. 1, 31.) Pending before the Court is: (1) Underwriters' Motion to Compel Arbitration and Stay Proceedings (Doc. 20); (2) Underwriters' Motion to Strike (Doc. 34); and MACo's Rule 15(a)(2) Motion for Leave to File Amended Complaint (Doc. 39). For the reasons stated below, the Court grants the Motion to Compel Arbitration and Stay Proceedings (Doc. 20), denies the Motion to Strike (Doc. 34) as moot, and grants the Rule 15(a)(2) Motion for Leave to File Amended Complaint (Doc. 39).

1

## FACTUAL AND PROCEDURAL BACKGROUND

MACo consists of an association of Montana counties that formed a joint risk pool to provide indemnity policies to its members. (Doc. 1 at 1.) MACo purchased excess of loss reinsurance for its policies from 2011 to 2018 from Lloyd's of London. (*Id.*) Underwriters, in turn, subscribed to the reinsurance agreement that MACo claims offers it excess reinsurance coverage for the claims here—Certificate No. PK1013217 ("Policy").[1] (*Id.* at 2.)

After Paul Jenkins and his family (collectively, "Jenkins") sued several of MACo's member counties for, *inter alia*, wrongful imprisonment, MACo and Jenkins eventually reached a settlement wherein MACo indemnified its members. (Doc. 1 at 3.) MACo demanded reimbursement from Underwriters pursuant to the Policy, but MACo alleges Underwriters refused to pay. (Doc 1 at 4.) MACo filed the instant action against Underwriters, claiming Underwriters' refusal breached the Policy's terms. (Doc. 1 at 4.)

Underwriters filed their first motion to compel and stay proceedings on April 7, 2020. (Doc. 7.) Before the Court could rule, MACo filed a motion for leave to

---

[1] MACo states in both its first Complaint (Doc. 1) and Amended Complaint (Doc. 31) that the policy at issue is Certificate No. PK1013217; however, it attached the Certificate for PK1013218 as an exhibit. (Doc. 31-1.) Underwriters responded to the claims under Certificate No. PK1013217, but noted that Underwriters subscribing to Certificate No. PK1013218 would join in the Motion to Compel to the extent necessary. (Doc. 8 at 7.) Based on the parties' representations, the Court presumes both certificates contain the same or similar contractual language and notes that this Order relates specifically to the policy named in the Amended Complaint—Certificate No. PK1013217.

amend its complaint. (Doc. 13.) There, MACo sought to add allegations that Underwriters also breached the Policy regarding claims brought by Freddie Joe Lawrence against MACO's member counties in another wrongful conviction case. (Doc. 13-1 at 6.) Underwriters opposed the motion for leave to amend and filed a second motion to compel arbitration and stay. (Doc. 20.)

On August 27, 2020, the Court issued an order granting MACo's motion to amend and denying as moot Underwriters' first motion to compel arbitration. (Doc. 30.) The Court explained it would rule on the second motion to compel at a later time, and stated it would consider the amended complaint in its ruling to allow MACo to present its best argument against arbitration.[2] (*Id.*)

MACo filed its amended complaint on the same day. (Doc. 31.) The amended complaint contains the same breach of contract allegations for Underwriters' failure reimburse it for the Jenkins claims, and adds breach of contract allegations for Underwriters' alleged refusal to participate in settlement of the Lawrence suit and failure to confirm that they would fulfill their indemnity obligations under the Policy. (*Id.*) The amended complaint also adds a count

---

[2] To streamline its docket, the Court mooted the first motion to compel. (Doc. 30.) However, nothing in that Order operated as a substantive ruling on the merits of the arguments contained therein. Indeed, the parties incorporated arguments from briefing on the first motion to compel into their arguments on the second. (Doc. 32.) Accordingly, the Court considered all arguments advanced thus far in reaching its instant ruling.

against Underwriters for violations the Montana Unfair Trade Practices Act. (Doc. 31 at 5–6.)

MACo filed a Notice of Supplemental Authority on September 22, 2020. (Doc. 33.) In response, Underwriters filed a Motion to Strike (Doc. 34), MACo filed a response (Doc. 37), and Underwriters filed a reply (Doc. 38).

Shortly before the Court was set to issue this Order, MACo filed a second Motion for Leave to Amend, seeking to join Everest National Insurance Company, another excess liability insurer, as a defendant. (Doc. 39). Underwriters oppose the motion. (Doc. 40 at 3.)

## **LEGAL STANDARD**

To determine whether parties intended to arbitrate, a court conducts a two-part inquiry to assess: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d

Cir. 2009). "This determination applies equally in domestic and international arbitration contexts." *Century Indem.*, 584 F.3d at 523.

## DISCUSSION

The first issue before the Court is whether the parties must submit to arbitration of the claims. Underwriters argue that the Policy requires MACo to submit its claims to arbitration. Specifically, they point to the Policy language, which states: "Any dispute arising out of or relating to the interpretation, performance or breach of this Agreement, as well as the formation and/or validity thereof, will be submitted for decision to a panel of three arbitrators." (Doc. 31-1 at 18.) MACo argues that the Policy's "service-of-suit" clause grants Plaintiff the right to circumvent arbitration and sue in federal court for Underwriters' failure to pay MACo "any" amount claimed to be due under the Policy, notwithstanding the arbitration clause. (Doc. 12 at 8.) For its part, the service-of-suit clause provides: "It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States." (Doc. 31-1 at 3.) Notably, MACo does not argue that the arbitration clause is null, void, or otherwise invalid, but rather that the service-of-suit clause creates a "carve-out" for certain claims. (Doc. 12 at 10.) Underwriters

argues that the arbitration clause must be read in harmony with the service-of-suit provision—a reading that does not exempt MACo's claims from arbitration.[3]

Even though MACo appears to concede the issue, the Court first addresses whether there was a valid arbitration agreement, and then analyzes whether each of MACo's claims against Underwriters falls within the scope of the arbitration agreement.  Then, the Court will discuss MACo's notice of supplemental authority, Underwriters' motion to strike, and MACo's motion for leave to amend.

I.      **Whether the parties must arbitrate claims**

   a.  **Whether there is a valid arbitration agreement**

Generally, courts should apply state law contract principles when deciding the threshold issue of whether a valid agreement to arbitrate exists.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).  "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  Under the choice of law provision in

---

[3] While Underwriters argue in the alternative that the arbitration clause delegates the issue of arbitrability to the arbitration panel, the Court agrees with MACo that the Policy does not evidence clear intent to send the arbitrability issue to the arbitration panel.  (Doc. 8 at 28.)  Therefore, the Court decides the issue of arbitrability.

6

the Policy, Montana law applies to the question of whether there is a valid agreement to arbitrate. (Doc. 8-5 at 16.)

Montana principles of contract interpretation require that, "'[t]he whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other.'" *Krajacich v. Great Falls Clinic, LLP*, 276 P.3d 922, 926 (Mont. 2012) (quoting *Richards v. JTL Group, Inc.*, 212 P.3d 264 (Mont. 2009); *see also* Mont. Code Ann. § 28-3-202. "Mere isolated tracts, clauses and words will not be allowed to prevail over the general language utilized in the instrument." *Krajacich*, 276 P.3d at 926 (quoting *Rumph v. Dale Edwards, Inc.*, 600 P.2d 163, 168 (Mont. 1979) (citations omitted)).

Here, MACo's suggested reading of the Policy is contrary to Montana contract interpretation principles, because it fails to consider the whole contract and give meaning to each part. MACo argues that the words "any amount claimed to be due," contained in the service-of-suit clause, are clear and show the parties' intent to create an exception to the arbitration clause. (Doc. 12 at 25.) It goes on to contend that reading the service-of-suit clause to facilitate the enforcement of arbitration awards would limit the language of the service-of-suit clause, or, alternatively, require the insertion of the words "to enforce or confirm an arbitral award" into the clause. (*Id.*) But if the service-of-suit clause encompassed all failure to pay claims, as MACo suggests, it would swallow the arbitration clause,

7

which orders the parties to submit "any dispute arising out of or relating to the interpretation, performance or breach of this Agreement" to arbitration. (Doc. 8-5 at 16.) Montana contract interpretation principles require a court to find meaning in both clauses. *Krajacich*, 276 P.3d at 926. A more reasonable interpretation of the Policy language, therefore, is that the service-of-suit clause provides a judicial avenue to compel arbitration or enforce an arbitration award.

Reading the service-of-suit clause in harmony with the arbitration clause also follows the conclusion reached by other courts in reviewing similar clauses. *See Century Indem.*, 584 F.3d at 554 (finding that "service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration"); *Safety Nat'l Cas. Corp. v. Certain Underwriters*, 587 F.3d 714, 725 (5th Cir. 2009) ("More likely the service of suit provision related to the consent of Underwriters for personal jurisdiction than to abrogate the arbitration clause"); *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda)*, 79 F.3d 295, 298 (2d Cir. 1996) ("The principal effect of the New York Suable Clause is to resolve the issue of personal jurisdiction over a foreign association . . . ."); *Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1361 (10th Cir. 1971) ("The assent of the insurer to jurisdiction does not prevent it from raising [an arbitration] defense based on policy terms."); *see also Sec. Life Ins. Co. of Am. v. Hannover Life Reassurance*

*Co. of Am.*, 167 F. Supp. 2d 1086, 1088 (D. Minn. 2001) (citations omitted). In other words, service-of-suit provisions serve to "obviate potential problems with obtaining jurisdiction over the parties," and do not conflict with arbitration clauses. *Sec. Life*, 167 F. Supp. 2d at 1088 (quoting *Old Dominion Ins. Co. v. Dependable Reinsurance Co.*, 472 So.2d 1365, 1368 (Fla. Dist. Ct. App. 1985)).

Therefore, the Court finds that the service-of-suit provision here works in concert–not in conflict–with the arbitration provision, and the Policy contains a valid agreement to arbitrate.

### b. The scope of the arbitration agreement

Having determined that a valid arbitration agreement exists, the next question is whether MACO's claims are within the scope of the agreement to arbitrate. *Kilgore*, 718 F.3d at 1058. Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and any doubts are resolved in favor of arbitration. *AT&T Techs.*, 475 U.S. at 650.

Underwriters assert that the disputes at issue here are subject to the presumption of arbitrability because the arbitration agreement is controlled by the Convention on Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), as enforced by the Federal Arbitration Act ("FAA"). 9 U.S.C. § 202; *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1152 (9th Cir.

9

2008). To determine whether to enforce an arbitration agreement under the Convention, courts generally analyze whether:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005) (citation omitted)). Under the Convention, there is a "strong presumption" in favor of arbitration agreements that is "reinforced by the emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Further, when the Convention applies, the FAA grants courts the authority to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. § 206.

Here, the arbitration clause within the Policy is an agreement in writing for purposes of the Convention. *See Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 999 (9th Cir. 2017) ("The Convention Treaty in turn defines an 'agreement in writing' to 'include an arbitral clause in a contract or an arbitration agreement . . . .'"). The Policy provides for arbitration within the United States, and the United States is a signatory of the Convention. Convention on the

Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. Further, insurance agreements are commercial in nature and Underwriters are not United States citizens. *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 74 (1st Cir. 2000). Therefore, the Convention, and the federal statutes enforcing the Convention, apply to the arbitration agreement between MACo and Underwriters.

"The Convention requires that courts must enforce an agreement to arbitrate unless the agreement is 'null and void, inoperative or incapable of being performed.'" *Balen*, 583 F.3d 647 at 654 (quoting *Mitsubishi Motors*, 473 U.S. at 619 n.3). Again, MACo does not argue the agreement is null and void or inoperable, but rather that there is a carve-out from the agreement to arbitrate. Additionally, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Considering the strong presumption of finding disputes arbitrable, the Court finds that each of MACo's claims against Underwriters fall within the scope of the valid arbitration agreement.[4]

---

[4] While the second motion to compel arbitration specifically refers to the Lawrence claims (Doc. 20), the arguments and relief requested from the first motion to compel (Doc. 7) are incorporated

First, MACo alleges that Underwriters failed to pay the amount due under the Policy after it indemnified member counties in the Jenkins lawsuit. The arbitration clause in the Policy encompasses "any dispute arising out of or relating to the interpretation, performance or breach of this Agreement, as well as the formation and/or validity thereof . . . ." (Doc. 31-1 at 18.) The Court is convinced that MACo's claim for unpaid amounts due under the Policy is contemplated within the words "performance or breach of this Agreement." (*Id.*) Further, if there were any doubts as to whether unpaid claims fall within the scope of the arbitration clause, those doubts must be decided in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25.

Second, the Lawrence claims fall even more squarely within the scope of the Policy's broad arbitration clause. MACo proposes a carve-out from the scope of arbitration for "any amounts claimed to be due." (Doc. 12 at 24–25.) However, MACo fails to allege that any amount is due for the Lawrence claims. Instead, MACo asserts that Underwriters refused to participate in settlement of the Lawrence suit, failed to offer any amount after MACo tendered its limit, and failed to confirm they would pay its indemnity obligations. (Doc. 31 at 5.) While Montana law allows insureds to bring partial anticipatory breach claims against

---

by the parties in the second motion to compel. *See supra* n.1. Therefore, the Court considers here whether each claim raised by MACo falls within the scope of the arbitration agreement.

insurers, a partial anticipatory breach claim falls under the arbitration clause, which requires arbitration for all disputes arising from a "breach" of the Policy. (Doc. 31-1 at 18.)

Third and finally, MACo's Montana Unfair Trade Practices Act ("MUTPA") claim against Underwriters must also be submitted to arbitration.[5] MACo contends that Underwriters failed to affirm or deny coverage in a reasonable time, misrepresented coverage, refused to pay a claim without conducting a reasonable investigation, failed to attempt in good faith to effectuate a prompt, fair and equitable settlement when liability was reasonably clear, neglected its duty not to compel insureds to file suit to recover amounts due, and violated the duty to provide a reasonable explanation of the basis in the policy for denial of a claim or compromise settlement. (Doc. 31 at 5–6.) Each of these alleged statutory violations, however, relate to the interpretation, performance, and breach of the Policy. Further, and again, any doubts as to the scope of the arbitration clause must be decided in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25.

---

[5] Underwriters did not explicitly request arbitration of the Montana Unfair Trade MUTPA claim in its second motion to compel (Doc. 20), but the second motion to compel was filed before the amended complaint and did not provide Underwriters the opportunity to address the MUTPA claim. (Doc. 31.) Moreover, the second motion to compel moved for arbitration of claims related to the Lawrence suit. (Doc. 20.) The MUTPA claim directly relates to the Lawrence litigation. (Doc. 31 at 6.)

MACo cites to *Thiokol*, an unreported opinion, to support its argument that the claims do not fall within the scope of the arbitration agreement. *Thiokol Corp. v. Certain Underwriters at Lloyd's of London*, No. 96-CV-028, 1997 U.S. Dist. LEXIS 8264 (D. Utah May 6, 1998). However, the party opposing arbitration in *Thiokol* was a third-party beneficiary who was not a party to the arbitration agreement. *Id.* at \*7. Unlike *Thiokol*, MACo and Underwriters are not third-party beneficiaries. Additionally, the court in *Thiokol* found that the signatory to the arbitration provision would be bound by the arbitration clause and arbitration was the "exclusive forum" for the contracting party to bring "any claims arising under the policy." *Id.* at \*13–14. Similarly, the parties here are bound by the arbitration agreement, and MACo must comply with the arbitration clause.

MACo also relies on *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 963 S.W.2d 392 (Mo. Ct. App. 1998) to urge against arbitration. The court in *Transit Cas. Co.* found the FAA did not apply to the arbitration agreement at issue because it was superseded by a provision in the Missouri Uniform Arbitration Act that "excluded arbitration agreements in 'contracts of insurance' from the enforcement of the Act." *Id.* at 394. Here, however, the FAA, as implemented by the Convention, applies to the arbitration agreement and requires a court to follow the body of federal and international law favoring arbitration.

*Mitsubishi Motors*, 473 U.S. at 631 (noting that the federal policy favoring arbitration "applies with special force in the field of international law").

Thus, the cases cited by MACo are unpersuasive, and the Court concludes that MACo's claims fall within the scope of the arbitration agreement.

## II. MACo's Notice of Supplemental Authority

MACo's Notice of Supplemental Authority (Doc. 33) appears to advance a new argument and fails to include a citation to MACo's previous briefs as required under the District of Montana's Local Rule 7.4. Because the Notice of Supplemental Authority fails to comply with the Rule, the Court declines to consider the additional authorities submitted by MACo. *See Montanans for Cmty. Dev. v. Motl*, 216 F.Supp. 3d 1128, 1137 n.7 (D. Mont. 2016). Therefore, Underwriters' Motion to Strike (Doc. 34) is denied as moot.

## III. Motion to Amend

MACo moved for leave to file a second amended complaint to join an additional defendant, Everest National Insurance Company ("Everest"). (Doc. 39.) Federal Rule of Civil Procedure 15(a)(2) grants the Court discretion to allow amendment of a complaint. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). A court "should freely grant leave when justice so requires." Fed. R. Civ. P. 15(b). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

(citations omitted).  The Court therefore grants MACo leave to file a second amended complaint.

However, the Court also exercises its "inherent power to control its docket and promote efficient use of judicial resources" by staying all proceedings in this matter pending arbitration. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936)).  In *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1997), the Ninth Circuit clarified that a Court may stay an action "pending resolution of independent proceedings which bear upon the case." Independent proceedings may be arbitral in character, and the issues in such proceedings need not control the action before the Court.  *Id.*  A stay must not damage another party or cause "hardship or inequity."  *Landis*, 299 U.S. at 255.  In *Landis*, for example, the court warned of hardships or inequities stemming from delay to parties. *Id.*

Here, the claims against Everest relate to the claims against Underwriters and may be affected by the results of arbitration.  MACo notes that "[t]he claims against Defendant Underwriters and Everest arise out of the same underlying litigation and settlement of the Lawrence suit."  (Doc. 40 at 2.)  While MACo claims the Everest claims will not increase any exposure of Underwriters, the claims against Underwriters may factor into Everest's liability.  Further, a stay

mitigates against estoppel or res judicata issues.  Finally, the Court limits the stay to correspond to the outcome of arbitration proceedings in order to prevent undue delay.  Therefore, the Court finds that a "just and efficient determination of the case will be promoted by a stay."  *Leyva*, 593 F.2d at 864.

## ORDER

For the foregoing reasons, the Court agrees that arbitration is mandatory under the Policy and federal law.  Accordingly,

IT IS ORDERED that Defendants' Motion to Compel Arbitration (Doc. 20) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (Doc. 34) is DENIED as MOOT.

IT IS FURTHER ORDERED that Plaintiff's Rule 15(a)(2) Motion for Leave to File Amended Complaint (Doc. 39) is GRANTED.

Finally, IT IS ORDERED that this matter is STAYED pending arbitration. The parties shall file a joint status report by February 19, 2021, updating the Court on the progress of the arbitration proceedings.

DATED this 22nd day of October, 2020.

_____
Dana L. Christensen, District Judge
United States District Court